IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| ROBBIN'S NEST FOR CHILDREN, | § | |
| LLC | § | CASE NO. 23-30735 |
| | § | |

FIFTH AMENDED PLAN OF
REORGANIZATION FILED BY DEBTOR

In accordance with 11 U.S.C. §1121 and §1106, Debtor, ROBBIN'S NEST FOR CHILDREN, LLC ("Debtor") files this Debtor's Plan of Reorganization as follows:

1. **DEFINITIONS**

For purposes of this Plan of Reorganization, the following terms and definitions shall have the following meanings unless the context clearly indicates otherwise:

1.1 **"Administrative Claim"** means any Claim constituting a cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

1.2 **"Administrative Claimant"** means any Person, including a Professional, entitled to payment on account of an Administrative Claim.

1.3 **"Allowed,"** when used with respect to a Claim means a Claim (i) to the extent it is not Contested; or (ii) a Disputed Claim, proof of which was filed timely with the Bankruptcy Court, and (A) as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy court; or (B) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order. "Allowed," when used with respect to an Administrative Claim of a Professional shall mean an Administrative

Claim approved by application to the Bankruptcy Court and entry of a Final Order approving such Administrative Claim.

1.4 **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

1.5 **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.6 **"Confirmation"** shall mean the approval by the Court of the Plan.

1.7 **"Confirmation Date"** means the date of entry of the Confirmation Order.

1.8 **"Confirmation Hearing"** means the hearing conducted as it may be continued from time to time by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan.

1.9 **"Confirmation Order"** means an order entered by the Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code. The confirmation order is final fourteen (14) days after it is entered by the Court or on the conclusion of an appeal of the confirmation order.

1.10 **"Court"** shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

1.11 **"Creditors"** shall mean all creditors of the Debtor holding claims for debts, liabilities, or demands of any character whatsoever, as defined in §101(10) of the Bankruptcy Code.

1.12 **"Debtor"** shall mean Robbin's Nest for Children, LLC.

1.13 **"Debtor's Assets"** shall mean all right, title and interest in and to all property of every kind and nature, whether known or unknown, owned by Debtor or the Estate, including, but not limited to, any cash, real property interests, tax refunds, equipment, furniture, or other tangible property. accounts receivable, work-in-process, contract rights, insurance policies, intangible property, books and records, and whether known or unknown, causes of action, including, but not limited to, (i) all claims and rights against insiders and affiliates of Debtor and third parties and (ii) all claims and rights arising under or related to the Bankruptcy Code, including but not limited to, sections 362, 505, 506, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

**1.14**   **"Distribution Date"** shall mean the 15th day of the first full month following 60 days after the Effective Date of the Plan.

**1.15**   **"Effective Date"** shall mean the 15th day of the first full month following sixty (60) days after the Plan is confirmed by the Court.

**1.16**   **"Final Order"** shall mean an Order of the Court which, not having been reversed, modified or amended and not being stayed, and the time to appeal from which, or to seek review or certiorari or rehearing, has expired and such Order has become conclusive upon all matters adjudicated thereby, and in full force and effect.

**1.17**   **"Insider"** shall have that meaning defined by 11 U.S.C. §101 (31).

**1.18**   **"Official Committee of Creditors"** shall mean those creditors appointed by the Office of the United States Trustee to serve in this Case.

**1.19**   **"Plan"** shall mean this Plan of Reorganization in its present form, or as it may be amended or supplemented from time to time.

**1.20**   **"Priority Claim"** means those Allowed Claims which are entitled to the priority provided for under §507(a) of the Bankruptcy Code.

**1.21**   **"Reorganized Debtor"** shall mean the Debtor on or after the effective date.

**1.22**   **"Secured Claim"** shall mean a Claim secured by a perfected valid and enforceable lien on property in which the Debtor has an interest, of a value determined in accordance with 11 U.S.C. §506(a), or as may otherwise be determined in the course of Claim allowance under this Plan or the Bankruptcy Rules and law.

**1.23**   **"Secured Tax Claim"** shall mean a claim described in 11 U.S.C. §507(a)(8) together with all accrued interest and penalties, which is also a Secured Claim.

**1.24**   **"Substantial Consummation"** shall occur upon the payment of the First Distribution under the Plan.

**1.25**   **"Unsecured Claim"** means any Claim that is not a Secured Claim, Administrative Claim or Priority Claim.

**2.**   **GENERAL TERMS AND CONDITIONS**

3

**2.1**     This Plan is intended to deal with all claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to §502(a) of the Bankruptcy Code.  However, only those claims allowed pursuant to §502(a) of the Bankruptcy Code will receive treatment afforded by the Plan in Section 4.

**3.     TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

**3.1     Payment of Administrative Expense claims.**  Each holder of an Administrative Claim that becomes an Allowed Administrative Claim on or after the date the confirmation order is final shall receive without interest on the date the confirmation order is final, subject to court approval, the amount of such claim, unless such holders have agreed to a different treatment of such claim.  An Administrative Claim that becomes an Allowed Administrative Claim on or after the confirmation order is final shall receive without interest the amount of such claim.  Except as provided in section 4.1.1, a claim for an Administrative Claim shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, or its respective properties, agents, successors or assigns, unless a request for payment of Administrative Claim is filed with the Court and served upon the Reorganized Debtor and Debtor's counsel no later than thirty (30) days after the Confirmation Date.  All payments for allowed Administrative Claims due on the date the confirmation order is final, subject to Court approval, shall be made by the Reorganized Debtor.

**3.2     Payment of United States Trustee Fees Incurred Prior to Confirmation.**  All fees incurred pursuant to 28 U.S.C. §1930(a)(6) for time periods prior to entry of the Confirmation Order shall be paid by the Debtor on the date the confirmation order becomes final.

**3.3     Payment of United States Trustee Fees Incurred Subsequent to Confirmation.**  All fees incurred pursuant to 28 U.S.C. §1930(a)(6) for time periods subsequent to entry of the Confirmation Order shall be paid by the Reorganized Debtor from its assets.  After Confirmation, the Reorganized Debtor shall file with the court and serve on the United States Trustee a monthly financial report for each month (or portion thereof) the case remains open in a format prescribed by the United States Trustee and provided to the Reorganized Debtor by the United States Trustee.

**3.4     Payment to Professionals.**  Claims of professionals for services provided and expenses incurred prior to the entry of the confirmation order shall be deemed Administrative Claims and shall be paid as provided in section 4.1.1 of the Plan; provided however, that notwithstanding the provisions of section 4.1.1, requests for payment of claims of professionals as Administrative Claims shall be filed with the Court and served on the Reorganized Debtor, Debtor's counsel and the

United States Trustee within thirty (30) days after the confirmation order is entered.  All such claims not so filed will be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, or its respective properties, agents, successors or assigns.  Claims of professionals for the services rendered and expenses incurred after the confirmation order is final shall be paid as agreed by the Reorganized Debtor from its Property.

## 4.  PLAN TREATMENT AND IMPLEMENTATION

### 4.1  Identification and Treatment of Classes of Creditors

A failure by the Reorganized Debtor to make a payment to any of its creditors pursuant to the terms of the Plan shall be an Event of Default.  If the Reorganized Debtor fails to cure an Event of Default as to such payments within thirty (30) days after receipt of written notice of default from a creditor, then that creditor may (a) exercise all rights and remedies the creditor may have under applicable state law; and/or (b) seek such relief as may be appropriate in this Court.

1.  *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan unless a particular claimant agrees to a different treatment.  The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

**Margaret M. McClure** – Ms. McClure holds a retainer balance in the amount of $22,138.20 and estimates fees and expenses in the amount of $28,000 and the Debtor is to pay any balance owed on the effective date of the plan.

**U.S. Trustee** – fees are current and will stay current until this case is closed.

2.  *Priority Unsecured Tax Claims*

None.

3.  *Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following chart lists all classes containing Debtor's secured pre-petition claims and the proposed

treatment under the Plan:

**Class 3(a)**

**Secured Property Taxing Authority Creditors**

      **Fort Bend County** filed a secured claim for ad valorem taxes on 715 Elm Street, Fresno, Texas, for $31,370.39. The Debtor will pay this claim in full plus statutory interest within 5 years of the petition date in equal monthly installments. The payments will be approximately **$843.00** per month with the first monthly payments being due and payable on the 15th day of the first full calendar month following 60 days after the effective date of the plan. Fort Bend County will retain its pre-and post-petition tax liens until all amounts due have been paid in full. The Debtor will pay the 2024 and subsequent post-petition taxes in the ordinary course of business prior to delinquency. In the event the Debtor does not make a payment required by the Plan, Fort Bend County will send notice of the default to the Debtor and Debtor's counsel and the Debtor will have 15 days to cure the default or defaults including the payment of interest that has accrued after the default. Fort Bend County is not required to give any notice of a default in the payment of post-petition taxes. Fort Bend County is required to give only two (2) notices of default under the Plan. If a default is not cured or a third default occurs Fort Bend County is entitled to take any and all action authorized under Texas law to collect the tax amounts due as calculated under Texas law in state court without further order of the bankruptcy court. These ad valorem taxes are secured as a first lien against 715 Elm Street, Fresno, Texas.

      **Fort Bend Independent School District** filed a secured claim for ad valorem taxes on 715 Elm Street, Fresno, Texas, for $30,440.80. The Debtor will pay this claim in full plus statutory interest within 5 years of the petition date in equal monthly installments. The payments will be approximately **$816.00** per month with the first monthly payments being due and payable on the 15th day of the first full calendar month following 60 days after the effective date of the plan. Fort Bend ISD will retain its pre-and post-petition tax liens until all amounts due have been paid in full. The Debtor will pay the 2024 and subsequent post-petition taxes in the ordinary course of business prior to delinquency. In the event the Debtor does not make a payment required by the Plan, Fort Bend ISD will send notice of the default to the Debtor and Debtor's counsel and the Debtor will have 15 days to cure the default or defaults including the payment of interest that has accrued after the default. Fort Bend ISD is not required to give any notice of a default in the payment of post-petition taxes. Fort Bend ISD is required to give only two (2) notices of default under the Plan. If a default is not cured or a third default occurs Fort Bend ISD is entitled to take any and all action authorized under Texas law to collect the tax amounts due as calculated under Texas law in state court without further order of the bankruptcy court. These ad valorem taxes are secured as a first lien against 715 Elm Street, Fresno, Texas.

**This class is impaired**

**Class 3(b)**

**Secured Texas State Tax Lien**

**Texas Workforce Commission** filed a secured tax claim and has a Texas State Tax Lien for $1,345.72. This debt is for State unemployment taxes.  The Debtor will pay this claim in full plus statutory interest within 5 years of the petition date in equal monthly installments.  The payments will be approximately **$35.00** per month with the first monthly payments being due and payable on the 15th day of the first full calendar month following 60 days after the effective date of the plan. The Texas Workforce Commission will retain its pre-and post-petition tax liens until all amounts due have been paid in full. The Debtor will pay the 2024 and subsequent post-petition taxes in the ordinary course of business prior to delinquency. In the event the Debtor does not make a payment required by the Plan, the Texas Workforce Commission will send notice of the default to the Debtor and Debtor's counsel and the Debtor will have 15 days to cure the default or defaults including the payment of interest that has accrued after the default. This creditor is not required to give any notice of a default in the payment of post-petition taxes. This creditor is required to give only two (2) notices of default under the Plan. If a default is not cured or a third default occurs this creditor is entitled to take all action authorized under Texas law to collect the tax amounts due as calculated under Texas law in state court without further order of the bankruptcy court.  In this case, the Texas State Tax Lien attaches to the Debtor's bank accounts, beds and all other personal property set out in Schedules A/B.

**This class is impaired**

**Class 3(c)**

**Lender Creditor – Land**

**Mohamad Akbari and Ali Farasat –** Mohamad Akbari and Ali Farasat have a secured mortgage claim for $438,295.20 pursuant to their March 9, 2017 promissory note and deed of trust. The payment on this mortgage will be **$4,188.58** per month for 180 months, including 8% interest.  The mortgagees will hold their lien through the deed of trust until the debt is paid in full.  This mortgage was taken out by the Debtor to finance the purchase of 715 Elm Street, Fresno, Texas on March 9, 2017.  This mortgage's priority is second in line after the Fort Bend County and Fort Bend ISD ad valorem taxes.
**This class is impaired**

**Class 3(d)**

**Working Capital Loan**

**United States Small Business Administration –** The Small Business Administration filed a deed of trust lien against the group home at 715 Elm Street, Fresno, Texas on October 19, 2017, and a UCC-1 on October 6, 2017 against all of Debtor's fixtures, machinery and equipment excluding automobiles.  The SBA lien against the group home is a junior lien and after the mortgage and the property taxes, the SBA has no real property to attach.  Also, the October 6,

2017 UCC-1 expired at the end of 5 years on October 6, 2022, so the SBA is an unsecured creditor and its treatment in this plan will be in Class 4.

**This class is impaired**

4.  *General Unsecured Claims*

**Class 4**

**General Unsecured Claims**

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  There are no unencumbered assets for these claims to attach.

 The Debtor will pay these general unsecured claims $60,000.00 on a pro rata basis over 60 months in equal monthly installments of **$1,000.00** with the first monthly payments being due and payable on the 15th day of the first full calendar month following 60 days after the effective date of the plan. The liquidation analysis reflects that these general unsecured creditors would receive 5.87% of $413,054.41 in a chapter 7 bankruptcy case.  In this chapter 11 case they will be receiving $60,000.00 which meets the "best interest of the creditors test."

**This class is impaired**

5.  *Insider Claims*

 Robin Kemp is the only insider in this case.  She is the owner and managing member of the Debtor.  Insiders will not be paid any pre-petition claims during the term of the Plan and their claims will be discharged upon confirmation of the Plan unless they were advancing money on behalf of the company and are owed reimbursables.

6.  *Equity Interest Holders*

 Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in ROBBIN'S NEST FOR CHILDREN, LLC.  The equity interest holder and managing member is Robbin Kemp.  Robbin Kemp will retain 100% of her interest in Robbin's Nest for Children, LLC. Ms. Kemp will not be reimbursed for any debt the Debtor may owe her except reimbursables.

**4.2    Treatment of Executory Contracts and Unexpired Leases.**

Robbin's Nest for Children, LLC will assume the Amur Equipment Finance, Inc. lease, the sprinkler system lease with Financial Pacific Leasing, Inc. and the Ray of Hope for Children contract. Claims for damages for the rejection of executory contracts and unexpired leases will constitute general unsecured claims against the Debtor.  Such Claims for damages must be filed

not later than the thirtieth (30th) day following the earlier of (a) the date of entry of an order of the Bankruptcy Court approving such rejection, or (b) the date the confirmation order is final. Any Claims not filed within such times shall be forever barred from assertion against the Debtor or the Reorganized Debtor.

### 4.3    Means for Execution of the Plan

#### 4.3.1    Vesting of Property of the Estate in the Reorganized Debtor

On the date the confirmation order becomes final all remaining property of the Debtor and of the Estate shall vest in the Reorganized Debtor free and clear of liens, claims, interests and encumbrances arising on or before the Effective Date, except as otherwise provided in the Plan or the Confirmation Order. If the Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under Chapter 7 prior to Substantial Consummation of this Plan, all property vested in the Reorganized Debtor and all subsequently acquired property owned by the Reorganized Debtor as of or after the conversion date shall revest in the Debtor and constitute property of the bankruptcy estate in the converted case.

#### 4.3.2    Continuation of Business Operations

From and after the date the confirmation order becomes final, the Reorganized Debtor is authorized to continue normal business operations and enter into such transactions as it deems advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

#### 4.3.3    Management of the Reorganized Debtor

Ms. Kemp shall continue to serve as the controlling person of the Reorganized Debtor and shall manage the Reorganized Debtor's affairs and oversee the implementation of the Plan.  She will be the distribution agent of the Plan. Ms. Kemp has a consulting business, handling placement, policies, procedures and facilities.  She charges $85.00 per person.  The consulting work that she conducts has no impact on the Debtor.

#### 4.3.4    Discharge of Debtor and Injunction

**Discharge of ROBBIN'S NEST FOR CHILDREN, LLC  -**  On the confirmation date of this Plan, Robbin's Nest for Children, LLC will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that this Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed

9

in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

### 4.3.5   Continuation of Anti-Discrimination Provisions of Bankruptcy Code

A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor, the Reorganized Debtor, or another Person with whom the Debtor has been or is associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a governmental unit.

### 4.3.6   Regulatory Approvals

This Plan is not intended to modify or supplant any regulatory authority over the Debtor or the Reorganized Debtor.  Therefore, all regulatory approvals required in connection with the Plan will be sought and obtained by the Reorganized Debtor.

### 4.3.7   Employment of Professionals and Experts

The Reorganized Debtor may, but shall not be required to, consult with attorneys, accountants, appraisers, brokers or other parties necessary to assist in the proper administration of this Plan and the affairs of the Reorganized Debtor.  The Reorganized Debtor may select and employ such persons without Bankruptcy Court review or approval.

### 4.3.8   General Powers

The Reorganized Debtor shall have the rights, powers and privileges set forth in this Plan, the Confirmation Order or applicable law.  Ms. Kemp and the Debtor shall have the power to take all such actions as in their judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to each power expressly granted in the subsections below and any power reasonably incidental thereto.  The Debtor shall have the power to:

    a.    Make all distributions for or contemplated by this Plan.

    b.    Consistent with maintaining the value and liquidating the residual assets of the Reorganized Debtor, invest in time or demand deposits, including certificates of deposit issued by any bank approved as a depository institution by the United States Trustee's office, United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof.

    c.    Supervise and administer the resolution, settlement and payment of Claims and

the distributions to the holders of Allowed Claims in accordance with this Plan.

d.     Enter into any agreement required by or consistent with the Plan and perform all of their obligations thereunder.

e.     Abandon any of the assets of the Reorganized Debtor if they conclude that such assets are of no benefit to the Creditors.

f.     Market and sell the Debtor's assets in accordance with the exercise of prudent business judgment.

g.     Participate in or initiate any proceedings before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding and litigate claims on behalf of the Reorganized Debtor, including without limitation all causes of action under Chapter 5 of the Bankruptcy Code and all state and federal causes of action or any other litigation which constitute an asset of the Reorganized Debtor and pursue to settlement or judgment such actions.

h.     Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving this Chapter 11 Case.

i.     Act in the name of or in the place of the Debtor in any action before the United States Bankruptcy Court or any other judicial or administrative body.

j.     Select and employ such professionals, agents or employees as they deem necessary to assist in the administration of the affairs of the Reorganized Debtor and compensate such persons.

k.     Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with this Plan.

l.     Propose any amendment, modification or supplement to this Plan.

m.     Receive, conserve and manage the assets of the Reorganized Debtor and sell or otherwise dispose of such assets for a price and upon such terms and conditions as they deem most beneficial to the Creditors and execute such deeds, bills of sale, assignments and other instruments in connection therewith.

n.     Open and maintain bank accounts on behalf of or in the name of the Reorganized Debtor.

o.     Pay all taxes, make all tax withholding and file tax returns and tax information returns and make tax elections by and on behalf of the Reorganized Debtor.

11

p.    Pay all lawful expenses, debts, charges and liabilities of the Reorganized Debtor.

q.    Enforce all provisions of this Plan.

r.    Protect, perfect and defend the title to any of the assets of the Reorganized Debtor and enforce any bonds, mortgages or other obligations or liens owned by the Reorganized Debtor.

s.    Carry insurance coverage, including insurance to protect the post-confirmation Reorganized Debtor against claims brought against them acting in their capacities as the Reorganized Debtor, in such amounts as they deem advisable.

t.    Establish such reserves for taxes, assessment and other expenses of administration of the Reorganized Debtor as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Reorganize Debtor.

u.    Exercise such other powers and duties as are necessary or appropriate in their discretion to accomplish the purposes of the Plan.

### 4.3.9   Records

The Reorganized Debtor shall maintain books and records relating to the affairs of the Reorganized Debtor, and all expenses incurred by or on behalf of the Reorganized Debtor.  The Reorganized Debtor shall also maintain records relating to all distributions either required to be made or effectuated under this Plan.

### 4.3.10   Effectuating Documents and Necessary Authorizations

The Plan Documents, which consist of all documents and exhibits that aid in effectuating the Plan will be executed and, if appropriate, filed with the appropriate governmental authorities on or before the Effective Date of the Plan, and they will become effective on the Effective Date of the Plan.  The Debtor will have authority to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Reorganized Debtor, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions of the Plan.

### 4.3.11   Reliance by Management

The Reorganized Debtor may rely, and shall be fully protected in acting or refraining from acting, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which they reasonably believe to be genuine and

to have been signed or presented by the proper party or parties or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties, and the Reorganized Debtor may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Reorganized Debtor may consult with counsel, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or suffered by them in accordance therewith.

## 5.        CLAIM OBJECTION PROCEDURES

### 5.1        Objection Deadline and Process

The Reorganized Debtor shall have the exclusive right to object to the allowance of any Claims provided for under the Plan.  All Claim objections must be filed within 60 days after the confirmation order is final.  All requests for a determination under 11 U.S.C. § 505 must be filed within 60 days after the confirmation order is final.

### 5.2        Provisions Governing Distributions

No distributions shall be made to any Class until the Claims in that class are resolved and an Allowed Amount is reached either by agreement or by Court Order.  Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed or if the Debtor has been notified in writing of a change of address.  If any holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the Reorganized Debtor is notified in writing of such holder's then current address.  All claims for undeliverable distributions must be made on or before the later of the first anniversary of the Effective Date of the Plan, or the ninetieth (90th) day following the date on which such Claim is Allowed.   After such date, all unclaimed distributions will revert to the Debtor, and the Claim of any holder with respect to such distribution will be discharged and forever barred.  Checks issued with respect to Allowed Claims will be null and void if not negotiated within six (6) months after the date of issuance thereof.

## 6.        EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

### 6.1        Impaired Classes to Vote

Each impaired class of Claims and Interests shall be entitled to vote separately to accept or reject the Plan.  A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated and undisputed in the Debtor' Schedules.

### 6.2        Acceptance by Class of Creditors

A class shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class that have voted to accept or reject the Plan.

### 6.3    Reservation of Cramdown Rights

If any impaired class shall fail to accept this Plan in accordance with section 1129 (a) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy Court to confirm the Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

## 7.    EFFECT OF CONFIRMATION

### 7.1    Legally Binding Effect

The provisions of this Plan shall bind all Creditors and Interest Holders, whether they accept this Plan or not.  On and after the date the confirmation order is final, all holders of Claims shall be precluded and enjoined from asserting any Claim against the Debtor or their assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan.

### 7.2    Revesting of Property in the Debtor

At the time the confirmation order is final, all remaining property of the Estate shall vest in and become property of the Reorganized Debtor.  However, if the case is converted to a Chapter 7 proceeding, the property re-vested in the Debtor under the Plan, or subsequently acquired assets, shall constitute property of the bankruptcy estate in the converted case.

### 7.3    Liens, Claims and Encumbrances

Except as otherwise specifically provided in this Plan, or in the Confirmation Order, on the date the confirmation order is final all property vesting in and becoming property of the Reorganized Debtor shall be free of all liens, claims and encumbrances.

### 7.4    Injunction

Except as otherwise provided in the Plan, or for obligations or liabilities required to be paid pursuant to the Plan or the Confirmation Order, the holders of Claims are enjoined from threatening, commencing or continuing any lawsuit or other legal or equitable action against the Debtor, or its property to recover any Claim or Interest.

### 7.5    Causes of Action

All claims and causes of action, including but not limited to claims recoverable under section 550 of the Bankruptcy Code are hereby preserved and retained for enforcement by the

Reorganized Debtor after the confirmation order is final.

## 8.    RETENTION OF JURISDICTION

### 8.1    Exclusive Bankruptcy Court Jurisdiction

The Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case for the following purposes after the confirmation order is final:

**8.1.1**    to ensure that the purpose and intent of the Plan are carried out;

**8.1.2**    to consider any modification of the Plan under section 1127 of the Bankruptcy Code before substantial consummation as defined in section 1101(2) of the Bankruptcy Code;

**8.1.3**    to hear and determine all Objections to Claims, controversies, motions, applications, lawsuits and disputes that may be pending at or initiated after the confirmation order is final;

**8.1.4**    to classify the Claims of any creditor and to re-examine Claims which have been allowed for purposes of voting, and to determine Objections which may be filed to Claims;

**8.1.5**    to hear, determine, and enforce all claims and causes of action which may exist on behalf of the Debtor or its Estate, including but not limited to all causes of action available to the Debtor under Chapter 5 of the Bankruptcy Code;

**8.1.6**    to consider and act on the compromise and settlement of any Claim against or cause of action on behalf of the Debtor or the Estate;

**8.1.7**    to hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, execution, or enforcement of the Plan;

**8.1.8**    to hear and determine all requests for compensation and/or reimbursement of expenses for services rendered or expenses incurred prior to the date the confirmation order is final which may be made after the confirmation order is final;

**8.1.9**    to enforce and interpret by injunction or otherwise the terms and conditions of the Plan;

**8.1.10**    to enter an order closing the Chapter 11 Case;

**8.1.11**    to correct any defect, cure any omission, or reconcile any inconsistency in the

Plan or Confirmation Order which may be necessary or helpful to carry out the purposes and intent of the Plan;

**8.1.12** to consider and act on such other matters consistent with the Plan as may be provided in the Confirmation Order;

**8.1.13** to issue orders in aid of execution and implementation of this Plan to the extent authorized by 11 U.S.C. § 1142 or provided by the terms of this Plan; and

**8.1.14** to decide issues concerning the federal or state tax liability of the Debtor or the Reorganized Debtor which may arise in connection with the confirmation or consummation of this Plan.

### 8.2  Limitation on Jurisdiction

In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## 9.  CONDITIONS TO CONFIRMATION AND CONSUMMATION OF PLAN

### 9.1  Conditions to Confirmation of Plan

The Plan will not be effective unless (a) the Confirmation Order becomes a Final Order, and, (b) all Plan Documents and other applicable documents necessary or appropriate to the implementation of the Plan have been executed, delivered, and where applicable, filed with the appropriate governmental authorities.

### 9.2  Annulment of Plan if Conditions Not Waived or Satisfied

The Debtor reserves the right to waive any of the conditions precedent to the effectiveness of either the Confirmation Order or the Plan.  If any of the conditions precedent are not waived, and are not satisfied within the specified time periods or can no longer occur, the Confirmation Order will be annulled and the Debtor and all parties in interest will return to the *status quo ante* immediately before the entry of the Confirmation Order.

## 10.  MISCELLANEOUS PROVISIONS

### 10.1  Payment of Fees

The Reorganized Debtor shall timely pay post-confirmation quarterly fees assessed under 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case.  After confirmation, the Reorganized Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee true and correct statements of all

16

disbursements made by the Reorganized Debtor for each month, or portion thereof, that this Chapter 11 case remains open.

### 10.2    Compliance with Tax Requirements

In connection with this Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions hereunder shall be subject to such withholding and reporting requirements.

### 10.3    Method of Surrender

If any property is surrendered pursuant to this Plan, the surrender shall be effective by the filing of a notice with the Clerk within 30 days after the confirmation order is final reflecting the Debtor' intent to surrender the property.

### 10.4    Amendment of the Plan

This Plan may be amended or modified by the Debtor before, or by the Reorganized Debtor after, the date on which the confirmation order is final as provided in section 1127 of the Bankruptcy Code.

### 10.5    Withdrawal of Plan

The Debtor reserves the right to withdraw this Plan at any time prior to the Confirmation Date. If the Debtor withdraw this Plan prior to the Confirmation Date, or, if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtor or any other person, or to prejudice in any manner the rights of the Debtor, the Debtor's estate or any person in any further proceedings involving the Debtor.

### 10.6    Notices

Any notices required to be given under this Plan shall be in writing.  Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of (a) three days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; or (b) the date the notice is actually received.

Notices shall be sent to:

     (a)    If to the Debtor, at:

         Robbin's Nest for Children, LLC
         c/o Margaret M. McClure

Attorney at Law
25420 Kuykendahl, Suite B300-1043
The Woodlands, Texas 77375

(b)     If to the U.S. Trustee, at:

United States Trustee's Office
515 Rusk, Suite 3516
Houston, TX   77002

(c)     If to any Creditor in its capacity as such, at its address or facsimile number as reflected on its proof of claim or Notice of Appearance, if any.

(d)     To any counsel for the Reorganized Debtor at such address or facsimile number as provided by the Reorganized Debtor

### 10.7    Due Authorization By Creditors

Each Creditor who elects to participate in the Distributions provided for herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the Distributions provided for in this Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

### 10.8    Filing of Additional Documentation

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 10.9    Implementation

The Debtor and the Reorganized Debtor shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

### 10.10    Mission Statement and contract – see attached.

### 10.11    Supplement to Fifth Amended Plan – see attached.

December 4, 2023

**/s/ Margaret M. McClure**

Margaret M. McClure
SBN 00787997
25420 Kuykendahl, Suite B300-1043
The Woodlands, Texas 77375
Telephone:  (713) 659-1333
Facsimile:  (713) 658-0334
margaret@mmmcclurelaw.com

ATTORNEY FOR DEBTOR

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to all persons who are receiving service by CM/ECF on the 4th day of December, 2023.

/s/ Margaret M. McClure

MARGARET M. MCCLURE

19



# Financial Responsibility Contract
## Inpatient or Outpatient Services

Patient Name: _____     Patient #: _____

Responsible Party: _____     Patient DOB: _____

For the services rendered by Robbins Nest For Children (hereinafter "**Robbins Nest For Children**") to the above-named patient (hereinafter "the patient"), the undersigned voluntarily agree(s) to pay for any, and all, charges for goods and/or services provided or furnished to the patient by Robbins Nest For Children to the full extent permitted by law, including property damage and/or stolen property. Moreover, the patient agrees(s) to execute releases of information to third-party payers and to cooperate fully with **Robbins Nest For Children** for purposes of communicating with third-party payers.

## Program Costs

Daily Room and Board
_____ Treatment Program                                             $260.00 Daily
_____ Treatment Program/Compass                                     $1,715 Office Visit
_____ Comprehensive Psychiatric Assessment Services (CPAS)          $2,145 Office Visit

Professional services                                                 Per service (rates available upon request)

**Room & Board Rate includes the following, based on clinical need:**
    (1) Recreational, music, creative arts, and art therapies
    (2) Pastoral counseling
    (3) Patient medications (see below for exclusions)
    (4) 24 Hour Nursing and Mental Health Services

**Professional services that may occur throughout the course of treatment will be charged in addition to the daily R&B:**
    (1) Admission evaluation and Initial examination
    (2) Comprehensive psychiatric assessment and treatment by a collaborative multidisciplinary team
    (3) Diagnostic evaluation/consultation and psychological evaluation beyond basic psychological testing
    (4) Psychotherapy (including individual or group; addiction counseling and/or family therapies)
    (5) Care management and discharge planning
    (6) 1:1 observation, billed per hour per staff member
    (7) Psychological and/or Neuropsychological testing
    (8) Behavioral Neurology & Neuropsychiatry Evaluations
    (9) Brain Stimulation consultations/services will be billed through Robbins Nest Outpatient Services
    (10) Sleep Medicine consultations/services will be billed through the Inpatient encounter.

**Services rendered outside of Robbins Nest For Children's Campus that may occur throughout the course of treatment will be charged in addition by the rendering Provider(s).**

    (1) These services may include, but not limited to, pharmacogenetics (i.e., Genomind) testing, MRI, PET scan.
    (2) Maintenance medications that are dispensed through the outpatient pharmacy at the time of discharge.

It is the policy of the **Robbins Nest For Children** that all patient medications except for those restricted at the point of admission (birth control, specially formulated medications- like some HIV combinations-that we require to be supplied exclusively by the patient or their family) will be covered by their insurance company it not be included under the daily room and board rate and will be available to be ordered through the Facilities pharmacy. If an external medication is not within **Robbins Nest For Children** formulary, the patient or caregiver can arrange a refill at a local pharmacy, consent for **Robbins Nest For Children** to refill the medication on their behalf through a contracted retail pharmacy, or have the medication express mailed to **Robbin Nest For Children**.

The undersigned recognize(s) that payments made to **Robbin Nest For Children** are advance payments for services to be provided to the patient. Such payments will be credited to the patient's account. After the patient is no longer receiving services from **Robbins Nest For Children** any excess payment made beyond the billed charges will be refunded within 30 days after discharge.

The undersigned recognize(s) that in the event there is a dispute over payment between the undersigned party, and/or any payor sources- including credit card payor sources- the undersigned authorizes **Robbins Nest For Children** to release the patient's protected health information to the payor source.

CC-251 (Rev. 4-23)



Page 2 of 2

Patient Name:

**Plan for Payment**

The undersigned understands and agrees to one of the following plans for payment of services rendered at Robbins Nest For Children by initialing the applicable plan:

_____ **In-network Insurance**

The undersigned agrees to pay for all applicable deductibles and co-pays associated with (                      ),your insurance plan, which provides a benefit for Inpatient Treatment at Robbins Nest. The undersigned understands that services will need to be paid for in full and in advance if Inpatient benefits under the insurance plan are exhausted &/or denied, either at the time of admission or thereafter. Robbins Nest For Children will be assigning benefits, with claims made payable to The Robbins Nest For Children. After claims have been processed, and the patient is no longer receiving services from Robbins Nest For Children any excess payment made beyond the billed charges will be refunded.

| Unit | Bi-Weekly Collection | Bi-weekly Collection Dates | Admissions Collection |
|---|---|---|---|
| Adolescent Treatment Program | $2,000 | | Copay/Deductible |
| Adult Treatment Program | $3,000 | | Copay/Deductible |
| Compass | $4,000 | | Copay/Deductible |
| CPAS | $5,000 | | Copay/Deductible |

_____ **No Insurance Coverage**

A deposit for the first 3 weeks of treatment is to be paid at the time of admission, with successive payments to be made every 2 weeks, and as long as treatment is provided. Payments are dependent on the program to which the patient is admitted. Payments are as follows:

| Unit | Bi-Weekly Collection | Bi-weekly Collection Dates | Admissions Collection |
|---|---|---|---|
| Adolescent Treatment Program | $2,000 | | $2,000 |
| Adult Treatment Program | $3,000 | | $3,000 |
| Compass | $4,000 | | $4,000 |
| CPAS | $5,000 | | $5,000 |

_____ **Out-of-Network Insurance**

Robbins Nest For Children agrees to courtesy file with your insurance company (  private pay   ); however, certification and final payment are at the sole discretion of the patient's health insurance plan. A deposit for the first 3 weeks of treatment is to be paid at the time of admission, with successive payments to be made every 2 weeks, and as long as treatment is provided. Payments are dependent on the program to which the patient is approved for treatment. The undersigned must refer to the insurance company for questions or concerns about coverage and certification issues, and appeal procedures. Robbins Nest For Children does not accept payment from said insurance company.

| Unit | Bi-Weekly Collection | Bi-weekly Collection Dates | Admissions Collection |
|---|---|---|---|
| Adolescent Treatment Program | $25,000 | | $40,000 |
| Adult Treatment Program | $30,000 | | $45,000 |
| Compass | $30,000 | | $40,000 |
| CPAS | $35,000 | | $50,000 |

FOR CREDIT CARD PAYMENTS: The undersigned hereby authorizes Robbins Nest For Children to charge the credit card(s) shown in the related Credit Card Authorization Form(s) according to the payment plan indicated above, and such authorization(s) shall remain in full force and effect to satisfy all amounts owed to Robbins Nest For Children according to this FINANCIAL RESPONSIBILITY CONTRACT. A non-refundable 2.5% processing fee will be applied to all credit and debit card transactions.

The undersigned state(s) that he, she, or they has/have carefully read the foregoing FINANCIAL RESPONSIBILITY CONTRACT and signs the same as his, her, or their own free act in Houston, Fort Bend County, Texas. All rates subject to change without notice.

Date _____   Signature _____   Print Name _____   Relationship _____:

Date _____   Witness _____



**Robbin's Nest for Children, LLC**
**Supplement to Fifth Amended Plan**

| Month 1 | | | Month 2 | | |
|---|---|---|---|---|---|
| 2 Children | $14,640.40 | $14,640.40 | 3 Children | $20,460.60 | $20,460.60 |
| | | | | | |
| Supplies for Resident | | | Supplies for Resident | | |
| Hygiene Products (2 @ 15.00) | $30.00 | $14,610.40 | Hygiene Products (3 @ 15.00) | $45.00 | $20,415.60 |
| Recreation Money (2 @ 20.00) | $40.00 | $14,570.40 | Recreation Money (3@ 20.00) | $60.00 | $20,355.60 |
| Allowance Money (2 @ 45.50) | $90.40 | $14,480.00 | Allowance Money (3 @ 45.50) | $136.50 | $20,219.10 |
| School Supplies (2 @ 20.00) | $40.00 | $14,440.00 | School Supplies (3@ 20.00) | $60.00 | $20,159.10 |
| Clothing Money  (2 @ 40.00) | $80.00 | $14,360.00 | Clothing Money (3 @ 40.00) | $120.00 | $20,039.10 |
| | | $14,360.00 | | | $20,039.10 |
| Utilities | | $14,360.00 | Utilities | | $20,039.10 |
| Water | $35.00 | $14,325.00 | Water | $50.00 | $19,989.10 |
| Light | $50.00 | $14,275.00 | Light/ Gas | $80.00 | $19,909.10 |
| Phone | $50.00 | $14,225.00 | Phone | $50.00 | $19,859.10 |
| Pest Control | $20.00 | $14,205.00 | Pest Control | $50.00 | $19,809.10 |
| Mortgage | $4,300.00 | $9,905.00 | Mortgage | $4,300.00 | $15,509.10 |
| | | | | | |
| Food | | | Food | | |
| Food | $100.00 | $9,805.00 | Food | $125.00 | $15,384.10 |
| | | | | | |
| Staff Salaries | | | Staff Salaries | | |
| Morning Staff (1 @ 8.00/hr) | $1,386.67 | | Morning Staff (1 @ 9.00/hr) | $1,560.00 | |
| Evening Staff (1 @ 8.00/hr) | $1,386.67 | | Evening Staff (1 @ 9.00/hr) | $1,560.00 | |
| Treatment Director (1 @ 8.00/hr) | $1,386.67 | | Treatment Director (1@18.00/hr) | $3,120.00 | |
| Case Manager (1 @ 8.00/hr) | $1,386.67 | | Case Manager (1@12.00/hr) | $2,253.00 | |
| Nurse (50 wk) | $200.00 | | Nurse(75wk) | $400.00 | |
| Payroll Taxes | $0.00 | | Payroll Taxes | $100.00 | |
| Expenses | | | Expenses | | |
| Professional Liability Insurance | $25.00 | | Professional Liability Insurance | $125.00 | |
| Pest Control | $20.00 | | Pest Control | $50.00 | |
| Lawn | $20.00 | | Lawn | $35.00 | |
| Office Supplies | $20.00 | | Office Supplies | $20.00 | |
| Drug Test | $10.00 | | Drug Test | $10.00 | |
| Diaster Emergency Fund | $25.00 | | Disaster Emergency Fund | $75.00 | |
| Vehicle Gas/Tolls | $25.00 | | Vehicle Gas/Tolls | $50.00 | |
| Cleaning Supplies | $20.00 | | Cleaning Supplies | $20.00 | |
| Background | $15.00 | | Background | $15.00 | |
| Vehicle Maintenance | $25.00 | | Vehicle Maintenance | $50.00 | |
| Creditors | $3,000.00 | | Creditors | $3,000.00 | |
| | | | | | |
| Insurance for Vehicle | $25.00 | $0.00 | Insurance for vehicle | $100.00 | $0.00 |
| | | | | | |
| Accountant (contract) | | | Accountant (contract) | | |
| Psychologist (contract) | | | Psychologist (contract) | | |
| Psychiatrist (contract) | | | Psychiatrist (contract) | | |
| Maintenance (contract) | | | Maintenance (contract) | | |
| | | | | | |
| | Balance | $753.32 | | Balance | $2,841.10 |

**Robbin's Nest for Children, LLC**
**Supplement to Fifth Amended Plan**

| Month 3 | | | Month 4 | | |
|---|---|---|---|---|---|
| 3 Children | $20,460.60 | $20,460.60 | 5 Children | $34,101.00 | $34,101.00 |
| | | | | | |
| Supplies for Resident | | | **Supplies for Resident** | | |
| Hygiene Products (3 @ 15.00) | $45.00 | $20,415.60 | Hygiene Products (5 @ 15.00) | $75.00 | $34,026.00 |
| Recreation Money (3 @ 20.00) | $60.00 | $20,355.60 | Recreation Money (5 @ 20.00) | $100.00 | $33,926.00 |
| Allowance Money (3 @ 45.50) | $136.50 | $20,219.10 | Allowance Money (5 @ 45.50) | $227.30 | $33,698.70 |
| School Supplies (3 @ 20.00) | $60.00 | $20,159.10 | School Supplies (5 @ 20.00) | $100.00 | $33,598.70 |
| Clothing Money (3 @ 40.00) | $120.00 | $20,039.10 | Clothing Money (5 @ 40.00) | $200.00 | $33,398.70 |
| | | $20,039.10 | | | $33,398.70 |
| Utilities | | $20,039.10 | **Utilities** | | $33,398.70 |
| Water | $50.00 | $19,989.10 | Water | $75.00 | $33,323.70 |
| Light/ Gas | $80.00 | $19,909.10 | Light/Gas | $125.00 | $33,198.70 |
| Phone | $50.00 | $19,859.10 | Phone | $100.00 | $33,098.70 |
| Pest Control | $50.00 | $19,809.10 | Pest Control | $50.00 | $33,048.70 |
| Mortgage | $4,300.00 | $15,509.10 | Mortgage | $4,300.00 | $28,748.70 |
| | | | | | |
| Food | | | **Food** | | |
| Food | $125.00 | $15,384.10 | Food | $250.00 | $28,498.70 |
| | | | | | |
| Staff Salaries | | | **Staff Salaries** | | |
| Morning Staff (1 @ 9.00/hr) | $1,560.00 | | Morning Staff (1 @ 9.00/hr) | $1,560.00 | |
| Evening Staff (1 @ 9.00/hr) | $1,560.00 | | Evening Staff (1 @ 9.00/hr) | $1,560.00 | |
| Treatment Director (1@ 18.00/hr) | $3,120.00 | | Treatment Director (1@ 21.00/hr) | $3,640.00 | |
| Case Manager (1@13.00/hr) | $2,253.00 | | Case Manager (1 @ 15.00/hr) | $2,600.00 | |
| Nurse(100wk) | $400.00 | | Nurse (100wk) | $400.00 | |
| Payroll Taxes | $100.00 | | Payroll Taxes | $100.00 | |
| Expenses | | | **Expenses** | | |
| Professional Liability Insurance | $125.00 | | Professional Liability Insurance | $125.00 | |
| Pest Control | $50.00 | | Pest Control | $50.00 | |
| Lawn | $35.00 | | Lawn | $35.00 | |
| Office Supplies | $20.00 | | Office Supplies | $150.00 | |
| Drug Test | $10.00 | | Drug Test | $20.00 | |
| Disaster Emergency Fund | $75.00 | | Disaster Emergency Fund | $75.00 | |
| Vehicle Gas/Tolls | $50.00 | | Vehicle Gas/Tolls | $200.00 | |
| Cleaning Supplies | $20.00 | | Cleaning Supplies | $50.00 | |
| Background | $15.00 | | Background | $15.00 | |
| Vehicle Maintenance | $50.00 | | Vehicle Maintanance | $100.00 | |
| Creditors | $3,000.00 | | Creditors | $3,000.00 | |
| | | | | | |
| Insurance for vehicle | $100.00 | $0.00 | Insurance for vehicle | $100.00 | $0.00 |
| | | | | | |
| Accountant (contract) | | | Accountant (contract) | | |
| Psychologist (contract) | | | Psychologist (contract) | | |
| Psychiatrist (contract) | | | Psychiatrist (contract) | | |
| Maintenance (contract) | | | Maintenance (contract) | | |
| | | | | | |
| | Balance | $12,543.00 | | **Balance** | $14,718.70 |

**Robbin's Nest for Children, LLC**
**Supplement to Fifth Amended Plan**

| Month 5 | | | Month 6 | | |
|---|---|---|---|---|---|
| 8 Children | $54,561.60 | $54,561.60 | 10 Children | $68,202.00 | $68,202.00 |
| | | | | | |
| **Supplies for Resident** | | | **Supplies for Resident** | | |
| Hygiene Products (6 @ 15.00) | $90.00 | $54,471.60 | Hygiene Products (10 @ 15.00) | $150.00 | $68,052.00 |
| Recreation Money (6 @ 20.00) | $120.00 | $54,351.60 | Recreation Money (10 @ 20.00) | $200.00 | $67,852.00 |
| Allowance Money (6 @ 45.50) | $273.00 | $54,078.60 | Allowance Money (10 @ 45.50) | $455.00 | $67,397.00 |
| School Supplies (6 @ 20.00) | $120.00 | $53,958.60 | School Supplies (10 @ 20.00) | $200.00 | $67,197.00 |
| Clothing Money (6 @ 40.00) | $240.00 | $53,718.60 | Clothing Money (10 @ 40.00) | $400.00 | $66,797.00 |
| | | $53,718.60 | | | $66,797.00 |
| **Utilities** | | $53,718.60 | **Utilities** | | $66,797.00 |
| Water | $200.00 | $53,518.60 | Water | $300.00 | $66,497.00 |
| Light/Gas | $275.00 | $53,243.60 | Light/Gas | $275.00 | $66,222.00 |
| Phone | $100.00 | $53,143.60 | Phone/internet | $150.00 | $66,072.00 |
| Pest Control | $50.00 | $53,093.60 | Pest Control | $200.00 | $65,872.00 |
| Mortgage | $4,300.00 | $48,793.60 | Mortgage | $4,300.00 | $61,572.00 |
| | | | | | |
| **Food** | | | **Food** | | |
| Food | $550.00 | $48,243.60 | Food | $1,200.00 | $60,372.00 |
| | | | | | |
| **Staff Salaries** | | | **Staff Salaries** | | |
| Morning Staff (2 @ 9.00/hr) | $3,120.00 | | Morning Staff (2 @ 9.00/hr) | $3,120.00 | |
| Evening Staff (2 @ 9.00/hr) | $3,120.00 | | Evening Staff (2 @ 9.00/hr) | $3,120.00 | |
| Treatment Director (1@ 21.00/hr) | $3,640.00 | | Treatment Director (1@21.00/hr) | $3,640.00 | |
| Case Manager (1 @ 15.00/hr) | $2,600.00 | | Case Manager (1 @ 15.00/hr) | $2,600.00 | |
| Nurse (100wk) | $400.00 | | Nurse (200wk) | $800.00 | |
| Payroll Taxes | $100.00 | | Payroll Taxes | $200.00 | |
| **Expenses** | | | **Expenses** | | |
| Professional Liability Insurance | $125.00 | | Professional Liability Insurance | $125.00 | |
| Pest Control | $50.00 | | Pest Control | $50.00 | |
| Lawn | $35.00 | | Lawn | $35.00 | |
| Office Supplies | $300.00 | | Office Supplies | $300.00 | |
| Drug Test | $20.00 | | Drug Test | $20.00 | |
| Disaster Emergency Fund | $300.00 | | Disaster Emergency Fund | $500.00 | |
| Vehicle Gas/Tolls | $400.00 | | Vehicle Gas/ Tolls | $600.00 | |
| Cleaning Supplies | $300.00 | | Cleaning Supplies | $500.00 | |
| Background | $15.00 | | Background | $15.00 | |
| Vehicle Maintenance | $100.00 | | Vehicle Maintenance | $100.00 | |
| Creditors | $3,000.00 | | Creditors | $3,000.00 | |
| | | | | | |
| **Insurance for vehicle** | $200.00 | $0.00 | Insurance for vehicle | $200.00 | $0.00 |
| | | | | | |
| Accountant (contract) | | | Accountant (contract) | | |
| Psychologist (contract) | | | Psychologist (contract) | | |
| Psychiatrist (contract) | | | Psychiatrist (contract) | | |
| Maintenance (contract) | | | Maintenance (contract) | | |
| | | | | | |
| | **Balance** | $24,100.60 | | **Balance** | $41,447.00 |

1

**Robbin's Nest for Children, LLC**
**Supplement to Fifth Amended Plan**

| Month 7 | | | Month 8 | | |
|---|---|---|---|---|---|
| 12 Children | $81,842.40 | $81,842.40 | 13 Children | $88,662.60 | $88,662.60 |
| | | | | | |
| **Supplies for Resident** | | | **Supplies for Resident** | | |
| Hygiene Products (12 @ 15.00) | $180.00 | $81,662.40 | Hygiene Products (13 @ 15.00) | $195.00 | $88,467.60 |
| Recreation Money (12 @ 20.00) | $240.00 | $81,422.40 | Recreation Money (13@ 20.00) | $260.00 | $88,207.60 |
| Allowance Money (12 @ 45.50) | $546.00 | $80,876.40 | Allowance Money (13@ 45.50) | $591.00 | $87,616.60 |
| School Supplies (12 @ 20.00) | $240.00 | $80,636.40 | School Supplies (13 @ 20.00) | $260.00 | $87,356.60 |
| Clothing Money (12 @ 40.00) | $480.00 | $80,156.40 | Clothing Money (13 @ 40.00) | $520.00 | $86,836.60 |
| | | $80,156.40 | | | $86,836.60 |
| **Utilities** | | $80,156.40 | **Utilities** | | $86,836.60 |
| Water | $300.00 | $79,856.40 | Water | $310.00 | $86,526.60 |
| Light/Gas | $300.00 | $79,556.40 | Light/Gas | $300.00 | $86,226.60 |
| Phone/internet | $150.00 | $79,406.40 | Phone/ internet | $150.00 | $86,076.60 |
| Pest Control | $200.00 | $79,206.40 | Pest Control | $200.00 | $85,876.60 |
| Mortgage | $4,300.00 | $74,906.40 | Mortgage | $4,300.00 | $81,576.60 |
| | | | | | |
| **Food** | | | **Food** | | |
| Food | $2,000.00 | $72,906.40 | Food | $2,100.00 | $79,476.60 |
| | | | | | |
| **Staff Salaries** | | | **Staff Salaries** | | |
| Morning Staff (3 @ 9.00 /hr) | $4,680.00 | | Morning Staff (3 @ 9.00/hr) | $4,680.00 | |
| Evening Staff (3 @ 9.00/hr) | $4,680.00 | | Evening Staff (3 @ 9.00/hr) | $4,680.00 | |
| Treatment Director (1@23 hr) | $3,986.67 | | Treatment Director (1 @23.00 hr) | $3,986.67 | |
| Case Manager (1@ 17.00 hr) | $2,946.67 | | Case Manager (1@ 17.00 hr) | $2,946.67 | |
| Nurse (300 wk) | $1,200.00 | | Nurse (300 wk) | $1,200.00 | |
| Payroll Taxes not Due | $1,800.00 | | Payroll Taxes not Due | $2,000.00 | |
| **Expenses** | | | **Expenses** | | |
| Professional Liability Insurance | $125.00 | | Professional Liability Insurance | $125.00 | |
| Pest Control | $50.00 | | Pest Control | $50.00 | |
| Lawn | $35.00 | | Lawn | $35.00 | |
| Office Supplies | $300.00 | | Office Supplies | $400.00 | |
| Drug Test | $20.00 | | Drug Test | $20.00 | |
| Disaster Emergency Fund | $1,000.00 | | Disaster Emergency Fund | $1,000.00 | |
| Vehicle Gas/ Tolls | $1,000.00 | | Vehicle Gas/Tolls | $1,100.00 | |
| Cleaning Supplies | $500.00 | | Cleaning Supplies | $500.00 | |
| Background | $15.00 | | Background Check | $15.00 | |
| Vehicle Maintenance | $100.00 | | Vehicle Maintenance | $200.00 | |
| Creditors | $3,000.00 | | Creditors | $3,000.00 | |
| | | | | | |
| Insurance for vehicle | $200.00 | $0.00 | Insurance for vehicle | $200.00 | $0.00 |
| | | | | | |
| Accountant (contract) | | | Accountant (contract) | | |
| Psychologist (contract) | | | Psychologist (contract) | | |
| Psychiatrist (contract) | | | Psychiatrist (contract) | | |
| Maintenance (contract) | | | Maintenance (contract) | | |
| | | | | | |
| | **Balance** | $38,332.06 | | **Balance** | $25,348.34 |

1

**Robbin's Nest for Children, LLC**
**Supplement to Fifth Amended Plan**

| Month 9 | | |
|---|---|---|
| | | |
| 13 Children | $88,662.60 | $88,662.60 |
| | | |
| **Supplies for Resident** | | |
| Hygiene Products (13@ 15.00) | $195.00 | $88,467.60 |
| Recreation Money (13 @ 20.00) | $260.00 | $88,207.60 |
| Allowance Money (13 @ 45.50) | $591.00 | $87,616.60 |
| School Supplies (13 @ 20.00) | $260.00 | $87,356.60 |
| Clothing Money (13 @ 40.00) | $520.00 | $86,836.60 |
| | | $86,836.60 |
| **Utilities** | | $86,836.60 |
| Water | $310.00 | $86,526.60 |
| Light/Gas | $300.00 | $86,226.60 |
| Phone/ internet | $150.00 | $86,076.60 |
| Pest Control | $200.00 | $85,876.60 |
| Mortgage | $4,300.00 | $81,576.60 |
| | | |
| **Food** | | |
| Food | $2,100.00 | $79,476.60 |
| | | |
| **Staff Salaries** | | |
| Morning Staff (3@ 9.00/hr) | $4,680.00 | |
| Evening Staff (3 @ 9.00/hr) | $4,680.00 | |
| Treatment Director (1 @ 23.00 hr) | $3,986.67 | |
| Case Manager (1 @ 17.00 hr) | $2,946.67 | |
| Nurse (300 wk) | $1,200.00 | |
| Payroll Taxes Due | $2,000.00 | |
| **Expenses** | | |
| Professional Liability Insurance | $125.00 | |
| Pest Control | $50.00 | |
| Lawn | $35.00 | |
| Office Supplies | $400.00 | |
| Drug Test | $20.00 | |
| Disaster Emergency Fund | $1,000.00 | |
| Vehicle Gas/Tolls | $1,100.00 | |
| Cleaning Supplies | $500.00 | |
| Background Check | $15.00 | |
| Vehicle Maintenance | $200.00 | |
| Creditors | $3,000.00 | |
| | | |
| Insurance for vehicle | $200.00 | $0.00 |
| | | |
| Accountant (contract) | | |
| Psychologist (contract) | | |
| Psychiatrist (contract) | | |
| Maintenance (contract) | | |
| | | |
| | **Balance** | $25,758.34 |